# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JOSEPH L. DRUMMOND,　　　　　　*
KENNETH A. JONES,

　　　　　　　　　　　　　　　*

Plaintiffs,

　　　　　　　　　　　　　　　*

v.　　　　　　　　　　　　　　　　　　　Civil Action No. ELH-18-626

　　　　　　　　　　　　　　　*　　　(Related Case No. ELH-18-1105)

RICKY FOXWELL, *Warden of ECI*,
ROBERT TROXELL, *CDM*,　　　　　*

Defendants.　　　　　　　　　　*

***

## <u>MEMORANDUM OPINION</u>

This consolidated case arises from an isolated error that occurred on October 25, 2017, at Eastern Correctional Institution ("ECI"), a Maryland prison located in Westover, Maryland.  The error resulted in the provision of sausages to inmates at breakfast that contained 2% or less of pork stock.

At the time of the incident, plaintiffs Joseph L. Drummond and Kenneth A. Jones were inmates housed at ECI.  *See* ECF 1 (Drummond Compl.); Civil Action No. ELH-18-1105, ECF 1 (Jones Compl.).[1]  They brought separate suits pursuant to 42 U.S.C. § 1983 against ECI Warden Ricky Foxwell and Dietary Manager Robert Troxell.  *Id.*  Claiming that consumption of pork is against their religion, each plaintiff seeks compensatory and punitive damages of $3,000,000 for defendants' alleged violation of their First Amendment rights.  *Id.*  Jones also included exhibits with his suit.

By Order of July 6, 2018, I consolidated Mr. Jones's case with that of Mr. Drummond.  I

---

[1] According to the Maryland Department of Public Safety and Correctional Services, Jones is presently incarcerated at the Maryland Correctional Training Center in Hagerstown, Maryland.

also designated Mr. Drummond's case as the lead one for filing purposes.  *See* Jones, ELH-18-1105, ECF 4.

Defendants have moved to dismiss or, in the alternative, for summary judgment.  ECF 11. Their motion is supported by a memorandum of law (ECF 11-1) (collectively, the "Motion") and several exhibits.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed plaintiffs that the failure to file a response in opposition to the defendants' Motion could result in dismissal of their Complaint.  ECF 13, 18.  Jones filed a response in opposition to the defendants' Motion; Drummond did not.  ECF 19.  Defendants did not reply.

Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary.  *See* Local Rule 105.6 (D. Md. 2018).  Defendants' Motion shall be construed as a motion for summary judgment and shall be granted.

## I.      Factual Background

Plaintiffs state that on October 25, 2017, while incarcerated at ECI, they ate breakfast consisting of what they believed to be maple sausage links.  Drummond Compl. at 2; Jones Compl. at 2.[2]  Thereafter, plaintiffs were informed by an inmate who had prepared breakfast that the sausages contained pork.  *Id.*  Drummond claims that he is a devout Rastafarian with a background in Islam, while Jones claims that he "has been a Christian his entire life."  Drummond Compl. at 3; Jones Compl. at 2.  Both state that consuming pork is against their religion.  *Id.*

Each plaintiff "immediately filed an A.R.P. [Administrative Remedy Procedure] complaining that Maryland Department of Corrections is prohibited from serving pork products" and that "ECI and it's [sic] dietary department has violated his first Amendment right to practice his religion, and the free exercise clause."  Jones Compl. at 2; *see also* Drummond Compl. at 2.

---

[2] All citations reflect their electronic pagination.

As a result of the occurrence, plaintiffs claim that they have suffered psychologically, mentally, and spiritually. Drummond Compl. at 4; Jones Compl. at 3. Drummond also claims that he suffered stomach cramps, diarrhea, and vomiting spells. Drummond Compl. at 2.

Troxell was the Correctional Dietary Manager at ECI during the relevant time. ECF 11-3 (Troxell Declaration), ¶1. In his Declaration, Troxell avers that neither plaintiff ever submitted any written request for a non-pork diet on the basis of their respective Rastafarian and Christian faiths. *Id.* at ¶5. To Troxell's knowledge, during the 27 years of his tenure in the Correctional Dietary department, no inmate has ever requested a non-pork diet on the basis of those faiths. *Id.*

During Drummond's incarceration at ECI, he signed and dated several Religious Preference Registration forms, each of which included a staff witness signature, informing ECI staff of the faith group that he intended to practice. ECF 11-2 at 18-22. In the most recent form, dated August 23, 2017, Drummond selected "Rastafarian" as the religion he intended to practice. *Id.* at 22. Likewise, during Jones's incarceration at ECI, he signed and dated several Religious Preference Registration forms. *Id.* at 23-29. In the most recent form, dated August 9, 2018, Jones selected "No Religious Affiliation," indicating that he did not intend to practice a religion. *Id.* at 29.

Troxell maintains that, in accordance with the policy of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), "no prison inmate food items of any kind may contain any pork or pork by-products out of general consideration of established Muslim and Jewish religious dietary restrictions, which forbid consumption of any pork[.]" ECF 11-3 at ¶3. Moreover, "[c]ertified Halal and Kosher diets are provided for Muslim and Jewish inmates, respectively, on the basis of widely recognized and established Muslim and Jewish religious convictions." *Id.* at ¶4. However, those religious diets are "only provided to inmates who submit

a written dietary request and have been approved by the prison chaplain once the chaplain has interviewed them individually to ascertain the veracity and sincerity of their respective religious faiths to warrant accommodation of a religious diet rather than the general population meals." *Id.*

Notably, at the relevant time, DPSCS did not order sausages with any pork. An Invoice dated September 27, 2017, reflects that ECI contracted to purchase 192 cases of turkey maple sausage links from a commercial food vendor. ECF 11-2 at 2. Of import here, the Invoice expressly states, in part: "Sausage, Turkey Maple Link . . . ." *Id.* Payment was due by October 27, 2017. *Id.* And, the Purchase Requisition (*id.* at 3) indicates an "Item Description" of "Turkey Sausage Links." Further, the "Receiving Report" describes the "articles" as "Turkey Sausage links." *Id.* at 4.

Also of relevance, all commercial vendors supplying inmate food items to ECI are explicitly informed prior to sale that any food items must not contain any pork or pork by-products, in accordance with DPSCS policy. *See* ECF 11-3 at ¶6. Troxell avers that ECI relies on the commercial food vendors to comply with this policy with respect to the inmate food items supplied to ECI. *Id.* Defendants also expect ECI staff to comply with the Directives and ECI policies regarding inmate meals. *Id.* at ¶7; ECF 11-6 at ¶3. Defendants do not dispute, however, that "sausage that contained 2% or less dehydrated pork stock" was served to ECI inmates on October 25, 2017. *See* ECF 11-1 at 5-6.[3]

On October 26, 2017, Drummond filed ARP complaint ECI-2788-17, asserting that by serving pork at breakfast on the date in question, ECI staff violated his First Amendment right to practice his religion. ECF 11-2 at 5-6. Drummond stated that he "is Rastafarian and is not allowed to eat any kind of pork products, because it is unholy, and unpure." *Id.* He sought, *inter alia,*

---

[3] Eggs were available upon request. ECF 11-1 at 5.

monetary compensation.  *Id.*

On November 7, 2017, Jones filed ARP complaint ECI-2889-17, asserting that by serving pork at breakfast on the date in question, ECI staff placed his health "in jeopardy."  *Id.* at 9-10. Jones claimed that as a result of eating pork, he vomited and suffered from diarrhea.  *Id.*  He also sought, *inter alia*, monetary compensation.  *Id.*

When responding to an ECI inmate's ARP complaint, Defendant Foxwell relies on the review and investigation by the staff.  ECF 11-6 at ¶4.  During the investigation of plaintiffs' ARP complaints by ECI staff, a correctional officer assigned to the "feed up" meal duty for October 25, 2017, provided a statement indicating that, to the officer's knowledge, no pork products were purchased or served in the DOC [Division of Correction], that the food item in question was turkey sausage, and that eggs were available if any inmate wanted a substitute.  ECF 11-2 at 7.

On January 3, 2018, Foxwell provided the following response to plaintiffs' ARP complaints, *id.* at 5, 9:

> Your request for Administrative Remedy has been investigated and is Meritorious in Part; upon review of reports from staff and supporting documentation, it has been determined that sausage that contained 2% or less dehydrated pork stock on 10/25/17.  This was served as an oversite [sic] by multiple departments and the vendor.  This product has been pulled and will not be served in the future.  Eating of pork products does not cause health issues.  Staff has been advised to check labels prior to serving.

On December 21, 2017, before receiving a response from Foxwell, Jones filed an appeal of his ARP complaint to the Commissioner of Correction, arguing that Foxwell failed to timely respond.  *Id.* at 11.  On January 17, 2018, the Commissioner responded, *id.* at 12:

> Your appeal has been investigated and is hereby found meritorious in part in that the Warden failed to adhere to the established timeframe outlined in OPS.185.0002. The investigation revealed you signed for the warden's response 8/19/17.  The warden fully addressed your initial complaint.  You were advised in the warden's response that staff has been instructed to check labels prior to serving.  The relief you seek will not be provided.

The Warden is directed to adhere to the established timeframe outlined in OPS.185.0002.

No further action is warranted through the ARP process.

On March 15, 2018, Jones filed a grievance appeal of the disposition of ARP complaint ECI-2889-17 with the Inmate Grievance Office ("IGO"). *See* ECF 11-5 at ¶4. The grievance was administratively dismissed, effective May 18, 2018, when Jones failed to respond to a letter from the IGO requesting that he provide supporting paperwork within 30 days. *Id.* On June 13, 2018, Jones filed another grievance appeal of the disposition of ARP complaint ECI-2889-17 with the IGO. That grievance is pending and, to my knowledge, no administrative decision has been issued. *Id.*

There is no record that Drummond filed any further appeal of his ARP complaint with the IGO. *See id.* at ¶3.

## II.     Standard of Review

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see*

*Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed Appx. 220, 222 (4th Cir. 2016) (per curiam). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 Fed. Appx. 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954,

961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 Fed. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion

when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. Appx. at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. Appx. at 638.

Neither plaintiff has filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d

431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Because plaintiffs are self-represented, their submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. Discussion

In their Motion, defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1) and (6), or summary judgment under Rule 56. They argue that (1) they are entitled to qualified immunity; (2) they did not personally participate in the alleged wrongdoing; (3) no First Amendment violation occurred; (4) no due process violation occurred based on a violation of DPSCS's policies and procedures; (5) plaintiffs have no constitutional right to criminal prosecution of defendants; (6) Drummond has failed to exhaust his administrative remedies; and

(7) Drummond's claim of physical harm from consuming pork is not cruel and unusual.  ECF 11-1.

## 1.  Exhaustion

In part, defendants raise the affirmative defense that Drummond has failed to exhaust his administrative remedies.  If Drummond's claim has not been properly presented through the administrative remedy procedure, it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  The PLRA provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004).[4]

---

[4] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'"  *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted).  Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'"  *Id*. at 651, 898 A.2d at 960 (citation omitted).  Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id*., nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC.  *See Abramson v. Corr. Med. Servs., Inc*., 359 Md. 238, 753 A.2d 501 (2000).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence, and provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (citations omitted). A claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, ____ U.S. ____, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation

---

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," Md. Code, Corr. Servs. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88, 93. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the court

14

is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

More recently, in *Ross v. Blake*, 136 S.Ct. 1850, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id*. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. And, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore,* 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this

situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The DPSCS has an established ARP for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP); OPS.185.0002.02.[5] The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance to include a "complaint of any individual in the custody of the Department of Correction [("DOC")] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; OPS.185.0002.02.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(b). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must

---

[5] OPS.185.0002 is an Executive Directive created by DPSCS, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive") available for review at http://itcd.dpscs.state.md.us/PIA. "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see also* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b); *see also* OPS.185.0002.02. A grievance must be filed in writing, in a format approved by the IGO, or by use of an ARP form. COMAR 12.07.01.04(A). And, the grievance must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" OPS.185.0002.05C(1). In C.S. § 1-101(k), a "managing official is defined "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DPSCS, each facility's warden is responsible for the ARP at the institutional level. OPS.185.0002.05E. Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. OPS.185.0002.05J.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. The prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05L. For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. *Id.*

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's

response.  COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.

An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code Ann., State Gov't §§ 10-101 *et seq.*

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A.  However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in a Maryland circuit court, so long as the claimant has exhausted his/her remedies.  *See* C.S. § 10-210.  An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement.  *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Drummond failed to exhaust his administrative remedies regarding the claim asserted here.  Although Drummond filed an ARP regarding this incident, he did not appeal the warden's decision to the Commissioner of Correction or to the IGO.  The latter is supported by an affidavit of an

employee at the IGO, who maintains that Drummond did not file any ARP appeal during the time period in question.  ECF 11-5.

As discussed above, the PLRA requires that inmates exhaust **all** available remedies properly.  The complete ARP process was available to Drummond, but it appears that he did not pursue it.  Thus, Drummond's claim is subject to dismissal for failure to exhaust.

Jones's claim fails on the merits.  Even if Drummond had exhausted, his claim would fail for the same reasons.

### 2.  The Claim

To be sure, inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974) and *Cruz v. Beto*, 405 U.S. 319 (1972) (*per curiam*)).  Therefore, prisoners must be afforded "reasonable" opportunities to practice their religion.  *Cruz*, 405 U.S. at 322.  This includes the "right to a diet consistent with [the inmate's] . . . religious scruples."  *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003). A prison official violates this right if he intentionally, and without adequate justification, denies an inmate a diet that is religiously mandated.  *Lovelace v. Lee*, 472 F.3d 124, 199 (4th Cir. 2006).

However, only intentional conduct is actionable under the Free Exercise Clause of the First Amendment.  *Lovelace*, 472 F.3d at 201.  The Fourth Circuit has held that "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause." *Id.*  Therefore, a plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983."  *Id.*  Similarly, an official's negligent act does not implicate the Due Process Clause.  *Id.*

Here, plaintiffs failed to assert that defendants engaged in a conscious or intentional interference with their right to practice their religion. First, plaintiffs made no effort either to inform ECI staff of their religious belief, requiring them to abstain from eating pork, or to request a religious diet based upon that belief. Second, there is not a shred of evidence of intentional conduct on the part of defendants.

Defendants do not dispute that "sausage that contained 2% or less dehydrated pork stock" was served to ECI inmates on October 25, 2017. *See* ECF 11-1 at 5-6. But, they have amply demonstrated that ECI staff ordered and intended to purchase turkey maple sausage links from a commercial food vendor, ECF 11-2 at 2-4. Moreover, the vendor was explicitly informed prior to sale that food items may not contain any pork or pork by-products, in accordance with DPSCS policy. ECF 11-3, ¶ 6. Defendant Troxell also stated that ECI relies on the commercial food vendors to comply with this policy with respect to the inmate food items supplied to ECI. *Id.* Unexpectedly, and contrary to the purchase order that had been placed, the vendor provided sausage with pork in it.

Section 1983 of 42 U.S.C. incorporates a causation requirement. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). In response to defendants' evidence, plaintiffs must show that the defendants' policies are the cause of the alleged burden on their exercise of religion. *Wright v. Lassiter*, ___ F.3d ___, 2019 WL 1645790, at *4 (4th Cir. April 17, 2019). In other words, they must show that their injuries "would not have occurred but for defendant's conduct." *Id.* (citing *Burrage v. United States*, 571 U.S. 204, 214 (2014)). This they have not done.

At most, a defendant was perhaps negligent for failing to check the food labels upon receipt, although such an omission would seem like a stretch. The fault was with the vendor. In

any event, defendants sought to correct any such error in the future by advising staff, going forward, "to check labels prior to serving." *See* ECF 11-2 at 5.

In sum, there is no dispute of material fact. The evidence, when viewed in the light most favorable to plaintiffs, shows that no First Amendment violation occurred. *See Johnson-Bey v. Indiana Dep't of Corr.*, 668 F. Supp. 2d 1122, 1129 (N.D. Ind. 2009) (holding that a single instance of being fed pork cannot support a claim that inmates were denied their First Amendment right to freedom of religion or a claim that the food service personnel violated the Fourteenth Amendment's equal protection clause); *accord Johnson v. Varano*, No. 714 C.D. 2010, 2011 WL 10843816, at *6 (Pa. Commw. Ct. Mar. 9, 2011) (stating that "a single incident of being inadvertently served pork does not deprive [an inmate] of the right to the free exercise of his faith").

## IV.     Conclusion

No genuine issue as to any material fact is presented. Defendants are entitled to a judgment as a matter of law.[6]

A separate Order follows.


<u>April 23, 2019</u>                                   _____/s/_____
Date                                                         Ellen L. Hollander
                                                                United States District Judge

---

[6] In light of the court's ruling, an analysis of defendants' remaining arguments is not necessary.